UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Denise Lasalle Hightower,      ) <br>              Plaintiff,  ) <br>                          ) <br>            -vs-       ) <br>                          ) <br> Kilolo Kijakazi,  ) <br> Acting Commissioner of Social Security,  ) <br>                          ) <br>             Defendant.  ) <br> _____) | Civil Action No.: 4:21-cv-04192-TER <br><br> **ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.     Procedural History

Plaintiff filed an application for DIB and SSI in September 2018, alleging inability to work since April 21, 2016. (Tr. 12). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in September 2020 at which time Plaintiff and a VE testified. (Tr. 12). The Administrative Law Judge (ALJ) issued an unfavorable decision on December 14, 2020, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 12-25). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request for review in October 2021 (Tr.1-3). Plaintiff filed an action

in this court. (ECF No. 1).

Importantly, the ALJ noted that Plaintiff had engaged in substantial gainful activity and was working at such a level through June 2018, where her alleged onset date was April 2016. (Tr. 15). "The remaining findings address the period... beginning July 1, 2018." (Tr. 15).

The ALJ noted there was a prior unfavorable ALJ decision far outside the relevant period in December 2011 and it was found to be unpersuasive as it was inconsistent with the current evidence and a significant amount of time had lapsed. (Tr. 16).

**B.     Introductory Facts**

Plaintiff was forty-three years old on the alleged onset date. (Tr. 23). Plaintiff has at least a high school education and past relevant work as a psychiatric aide, housekeeping cleaner, and cafeteria attendant. (Tr. 23). Plaintiff alleges disability initially due to major depression, bipolar, schizophrenic, mood swings, loss of memory, and loss of ability to use right leg. (Tr. 123).

**C.     The ALJ's Decision**

In the decision of December 2020, the ALJ made the following findings of fact and conclusions of law (Tr. 12-25):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant engaged in substantial gainful activity during the following periods: April 2016 through June 2018 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity, beginning July 1, 2018.

4. The claimant has the following severe impairments: degenerative joint

        disease (DJD) of the bilateral knees, residuals left lower extremity partial thickness friction burn injury, neuropathy, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with exceptions. The claimant can stand/walk 4 hours in an 8- hour day. She can occasionally stoop, kneel, crouch, crawl, balance, or climb ramps/stairs; but never climb ladders/ropes/scaffolds. She is limited to simple, routine, and repetitive tasks but is able to maintain concentration, persistence, or pace for periods for at least 2 hours at a time, perform activities within a schedule, maintain regular attendance, complete a normal workday and work week. She is able to perform GED Reasoning Development Level 2 jobs. She can frequently interact with the public; and frequently interact with coworker in close, "team-type" work. She can tolerate frequent changes in a routine work setting.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on April 2, 1973 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569,

    404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 21, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in the subjective symptom evaluation. Plaintiff generally argues the ALJ failed to perform a proper function by function analysis. Plaintiff argues the ALJ did not properly evaluate mental impairments in the RFC, specifically as to interactions with others and concentration, persistence and pace.[1] Plaintiff argues the ALJ did not properly evaluate lower extremity pain and weakness in the RFC as to standing/walking. Defendant argues the ALJ's analysis here was sufficient, was in accordance with the applicable law, and Plaintiff has failed to show that the ALJ's decision is not based on substantial evidence.

**A. LEGAL FRAMEWORK**

  **1. The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[1] In between the discussions about RFC social interactions and CPP, Plaintiff's brief cites two paragraphs of case law about "conflicting medical opinions"; however, Plaintiff presents no arguments about conflicting medical opinions. (ECF No. 18 at 20-21). The court is not informed of which medical opinions in the record Plaintiff is referencing. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 152, n.4 (4th Cir. 2012)(issue was waived because plaintiff failed to develop argument); *see Hayes v. Self-Help Credit Union*, No. 1:13-cv-00880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014) (noting that it is not the role or responsibility of the court to perform the research needed to support or rebut a perfunctory argument).

4

be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.     **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**<u>Subjective Symptom Evaluation</u>**

The Court begins with Plaintiff's issue of subjective symptom evaluation because Plaintiff's RFC arguments rely in part on fully accepting all of Plaintiff's allegations. Plaintiff argues the ALJ erred in the subjective symptom evaluation.

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use

7

the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an

individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

Plaintiff argues *Arakas v. Comm'r*, 983 F.3d 83 (4th Cir. 2020) held that it is error to reject subjective allegations that are inconsistent with objective evidence. (ECF No. 18 at 27-28). However, *Arakas* focused on the standard for evaluating fibromyalgia(FM), an impairment that tends to elude objective evidence and a presentation of which is almost entirely subjective. This case does not present an issue about an elusive disease with no objective medical evidence. *See Hayes v. Comm'r*, No. 2:20-CV-03033-BHH-MGB, 2022 WL 1057179, *11 (D.S.C. Jan. 27, 2022). A review of the ALJ's decision shows an in-depth consideration of evidence with citation to and consideration of both abnormal and normal findings and citation to and consideration of Plaintiff's subjective complaints. (Tr. 15-22).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (Tr. 22). Before this statement, the ALJ reviewed Plaintiff's testimony:

> The claimant testified she is unable to work due to problems with her legs and mental conditions. She lives in a single-story house with her four children. Her oldest child is 17 and her youngest is eight. Three of her children go to classes and her oldest attends classes online. Her oldest child helps with the younger children, prepares meals, cleans the home, and does yard work. He drives the younger children to school. She performs some cleaning and cooks sometimes. Her brother helps with cooking sometimes, and helps monitor her medications. The brother goes to her house every day for about three or four hours. She is not concerned about her weight. She does not exercise, but her doctor wants her to move around more instead of staying in her room sleeping all day. She is right-handed. She has a driver's license and drives three or four times a week to go to a store or take the children to school. She earned a GED. She was in special education classes in school. She can read and write, count to 100, perform simple addition and subtraction, count money, and make change. In August 2018, her employer terminated her because she could not follow directions or remember what she needed to. Her legs would give out causing her to fall. In May 2019, she sustained a friction burn in an automobile accident. Her knees hurt and she takes pain medication. She has poor balance and is not able to stand long periods. She has arthritis in both legs. She does not use a brace or assistive device. She has trouble remembering things and staying focused. She cannot remain calm or deal with others appropriately. She attends counseling and takes medications for her mental problems. Her medications cause poor appetite and a desire to stay by herself. She stays in bed all day about a week or a week and a half a month. Medication does not help with this problem. She can walk about five minutes and sit about three minutes. She can lift about five pounds. She sometimes shops for groceries, but her brother or son takes them into the house from the car. She is able to perform self-care, but sometimes lacks motivation. She reads sometimes. Her oldest son is in the band, but she does not go see him play due to lack of energy. She has issues with depression. She used to hallucinate, but the last one was over a year ago. She has memory loss. She does not think her medications help much. She could not remember five items to buy at the store (Hearing Record).

(Tr. 21). A thorough discussion of medical records preceded the subjective symptom evaluation. (Tr. 16-18). The ALJ referenced this evidence as a whole before discussing the records again specifically

in light of the inconsistencies; "claimant alleges she is unable to work due to problems with her legs and symptoms of her mental conditions. The record, however, does not support the alleged loss of functioning." (Tr. 22). The ALJ discussed Plaintiff's knees, burn residuals, and neuropathic pain but with little evidence related to neuropathy. The ALJ considered the February 2020 consultation where Plaintiff had intact sensation in lower extremities, and imaging showing mild to moderate arthritic changes in knees. (Tr. 22). The record indicated full range of motion and full strength in both lower extremities. The ALJ found the evidence did not support the allegations that Plaintiff could only stand/walk/sit a few minutes at a time. Plaintiff also had full range of motion and strength in all extremities which did not support the subjective allegation that Plaintiff could only lift a few pounds. (Tr. 22).

The ALJ then turned to mental allegations. (Tr. 22). Treatment notes indicated Plaintiff's mental health symptoms improved with medication and she reported to providers better mood, more energy, and better ability to interact appropriately with others. (Tr. 22). The ALJ acknowledged that some exams indicated some mental limitations but not to the severity alleged by Plaintiff. At two exams, providers found that Plaintiff malingered by exaggerating her symptoms. At recent exams, Plaintiff had near normal mental status and had significantly improved with therapy and medication. (Tr. 22). Plaintiff herself admitted to drinking too much alcohol and her psychiatrist told her the medication would not be as effective with alcohol. The ALJ stated that notes showed improved symptoms when alcohol was decreased and worsened symptoms when alcohol was increased. The ALJ found the evidence supported the RFC found and there were no marked or extreme limitations in any area of mental functioning. (Tr. 22). Plaintiff argues that the primary evidence relied on by the ALJ was malingering. (ECF No. 18 at 28). Two exams of malingering were not the only or

primary evidence relied on by the ALJ as discussed above; the ALJ considered treatment notes as well as those consultative exams. Plaintiff argues that malingering "findings do not call into question her other mental health symptoms." If a claimant is exaggerating symptoms and received a malingering diagnosis by a medical provider as a result, such exaggeration of symptoms is relevant to the determination of how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p. The ALJ created an accurate and logical bridge from the evidence in the record of both treating and consulting providers to the conclusion that the severity of the limitations as alleged by Plaintiff were not consistent with the record evidence.

The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. Even with some evidence of abnormal findings, the ALJ provided more than a mere scintilla of record support for the subjective symptom evaluation. The Court does not weigh again evidence already weighed by the ALJ. The ALJ complied with the applicable regulations in making clear to a subsequent reviewer the reasons for the findings made. The ALJ's decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The ALJ properly discounted allegations because they were inconsistent with the record and this is contemplated by the regulations which state that, in evaluating a claimant's symptoms, an ALJ should examine the entire case record, which includes the objective medical evidence, along with other relevant evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c).

**RFC**

Plaintiff generally argues the ALJ failed to perform a proper function by function analysis. Plaintiff argues the ALJ did not properly evaluate mental impairments in the RFC, specifically as to interactions with others and concentration, persistence, and pace. Plaintiff argues the ALJ did not properly evaluate lower extremity pain and weakness in the RFC as to standing/walking.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

*Physical*

Plaintiff argues the ALJ did not properly evaluate lower extremity pain and weakness in the RFC as to standing/walking.

13

The ALJ found an RFC of reduced light work; Plaintiff could stand/walk four hours in a work day. Plaintiff could occasionally stoop, kneel, crouch, crawl, balance, or climb ramps/stairs and never climb ladders/ropes/scaffolds. (Tr. 20). The ALJ discussed Plaintiff's lower extremity in the context of functional limitations:

> The record, however, does not support the alleged loss of functioning. The claimant has DJD in both knees, residuals from a friction burn on her left leg, and some neuropathic pain. The record contains little evidence related to the neuropathy other than a diagnosis and reference to Gabapentin. The IMCE in February 2020 found she had intact sensation in her lower extremities. X-rays revealed arthritic changes in both knees, though the condition is mild to moderate. The claimant also suffered a friction burn on her left leg and underwent a skin graft. On exam in July 2019, the skin around the wound was soft and pliable. The record overall indicates she has full range of motion and full muscle strength in both lower extremities. Thus, the evidence does not support the claimant's allegations she can stand, walk, or sit only a few minutes at a time. She has full range of motion and strength in her back and all extremities, thus, the evidence does not support the allegation she can lift only a few pounds.

(Tr. 22). Before this discussion, the ALJ discussed records where Plaintiff was still working in 2017, an examiner found the left knee partially dislocates upon manipulation but with no significant loss of function and no difficulty walking with a normal range of motion and strength. (Tr. 16). The ALJ discussed 2020 imaging and exams of normal gait and full range of motion where the left knee still dislocated easily but again did not create loss of function. Plaintiff had no muscle atrophy and negative straight leg raise tests. The ALJ found additional physical limitations after Plaintiff sustained a burn injury after being run over by a car. (Tr. 17-18). The ALJ noted after Plaintiff's skin graft in 2019, she had some hyperpigmentation and minimal raised area, but it was soft and pliable with full range of motion. A December 2019 neurological exam was normal. (Tr. 18). The ALJ cites that the non-examining consultant opinion found four hours stand/walk. (Tr. 17). The ALJ noted in 2020 Plaintiff's doctor told Plaintiff to increase her activity, that she is not to sit for longer than one

hour at a time. (Tr. 18).

An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). The determination of an RFC is an administrative determination not a medical one. *See* 20 CFR § 404.1546. The ALJ explained the evaluation of the record evidence.[4] The undersigned has reviewed the exhibits cited by the ALJ as substantial evidence. "The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). The ALJ's RFC here properly addressed the limitations supported by substantial evidence in the record.

*Mental*

Plaintiff argues the ALJ did not properly evaluate mental impairments in the RFC, specifically as to interactions with others and concentration, persistence, and pace.

The ALJ found Plaintiff has severe impairments of generalized anxiety disorder, major depressive disorder, and PTSD. (Tr. 15). Plaintiff had no severe intellectual disorder. (Tr. 17). The ALJ found non-severe impairments of borderline intellectual functioning, personality disorder, and alcohol use disorder. (Tr. 19).

Interactions

In the paragraph B analysis, the ALJ found moderate limitations in interacting with others. (Tr. 20). The ALJ noted the consultative exam within the relevant period in 2019 stated the

---

[4] Plaintiff argues that while treatment exams were mostly normal, Plaintiff's reports/complaints were consistent across visits. (ECF No. 18 at 26). However, as discussed previously in the subjective symptom evaluation, the concern is also the consistency of Plaintiff's complaints as compared with the record evidence. Further, normal exams with no loss of function supports the ALJ's findings.

consultant could not determine limitations in these areas due to malingering during the exams. (Tr. 20). Plaintiff herself reported improvement with medication and at more recent exams, Plaintiff reported more energy to accomplish tasks. (Tr. 20). The ALJ gave an RFC with limitations of frequently interact with the public and frequently interact with coworkers in close, "team-type" work. (Tr. 20). The ALJ discussed Plaintiff's testimony that she lived with her four children and her brother went to her house every day for 3-4 hours. (Tr. 21). Plaintiff reported she had a desire to stay by herself and sleep all day. Plaintiff testified medication did not help despite treatment notes reporting otherwise. (Tr. 21). Plaintiff reported sometimes shopping. (Tr. 21). The ALJ addressed the 2017 consultative exam where the examiner stated Plaintiff would have moderate to severe problems interacting with others; the ALJ found the 2017 opinion unpersuasive as it relied heavily on allegations and misinformation about Plaintiff's history and her current treatment records did not support more restrictive limitations. (Tr. 16). Plaintiff also was working up until June 2018. (Tr. 15). The ALJ discussed the 2019 consultative exam where Plaintiff was found to embellish psychotic symptoms and there was no diagnosis given. (Tr. 16). Plaintiff had no difficulties relating to the examiner. The examiner could not determine ability to interact with others due to the malingering. (Tr. 16-17). The Miller Forensic Assessment of Symptoms Test indicated Plaintiff malingered mental illness. (Tr. 17). The ALJ found some of the mental limitations by the non-examining reconsideration consultant were unsupported by the current evidence. (Tr. 17). The ALJ discussed mental health records in 2019 and 2020 where Plaintiff reported medication helping her "not run[] her mouth as easily," but that when she increased her alcohol consumption, she was "going off on people." By summer of 2020, Plaintiff was feeling less agitated and felt stable. (Tr. 18). The ALJ noted that treatment notes indicated medication gave Plaintiff a better ability to interact appropriately

with others. (Tr. 22).[5]

The ALJ supported the functional limitations as to social interactions found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record.

CPP

Plaintiff argues that the ALJ did not account for Plaintiff's moderate limitations in CPP by only limiting Plaintiff to simple, routine, repetitive tasks, citing *Mascio*. (ECF No. 18 at 22-24). However, the ALJ provided RFC limitations well beyond tasks: "She is limited to simple, routine, and repetitive tasks but is able to maintain concentration, persistence, or pace for periods for at least 2 hours at a time, perform activities within a schedule, maintain regular attendance, complete a normal workday and work week. She is able to perform GED Reasoning Development Level 2 jobs. ... She can tolerate frequent changes in a routine work setting." (Tr. 20).

The reconsideration non-examining consultant opinion the ALJ relied on in part found that Plaintiff may have mild difficulties understanding complicated or multi-step directions due to limited concentration and attention skills <u>if using alcohol</u> and Plaintiff needed tasks that only required up to a two hour period of concentration/attention. (Tr. 17, 144).

Under *Mascio*, once an ALJ has made an earlier finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in the RFC assessment or explain why no such limitation is necessary. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). The Fourth Circuit held that an ALJ does not

---

[5] Defendant notes that even if there were error, which there is not, that two of the three VE opined jobs involve the least amount of social interaction possible, thereby creating no outcome determinative error. *See* DOT#209.587-034("People: 8 - Taking Instructions-Helping N - Not Significant") #209.667-014("People: 6 - Speaking-Signaling N - Not Significant").

account for a claimant's limitations in concentration, persistence, and pace by restricting the RFC or the hypothetical question to the vocational expert to simple, routine tasks or unskilled work. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). "As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The functional area of "concentrate, persist, or maintain pace" refers to the ability to "focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, Subpart P, App. 1 § 12.00(E)(3)(includes examples of this mental functioning area). An ALJ's finding of a normal workday(2 hour periods then a break) in addition to other limitations may not be error under *Mascio* as long as supported by substantial evidence in the record, such as a physician finding the same. *See Shinaberry v. Saul*, 952 F.3d 113, 121-123 (4th Cir. 2020)(finding an RFC of only simple, routine, and repetitive tasks without any hour increment findings accounted for claimant's moderate CPP limitations where the ALJ "discussed in detail the psychological evaluations performed by the SSA psychological consultants and Dr. Burlingame, as well as Shinaberry's adult function report, and sufficiently explained" why the RFC accounted for moderate CPP limitations); *Norris-Gremillion v. Saul,* No. 9:19-CV-917-TMC, 2020 WL 6737669, at *3-4 (D.S.C. Nov. 17, 2020)(discussing an ALJ's reliance on two opinions of two hour limitation and finding no *Mascio* error). As discussed above, the ALJ's finding of two hour increments along with other limitations was supported with discussion of record evidence by the ALJ. The ALJ here complied with *Mascio* and the ALJ's findings here are more akin to *Shinaberry* than *Mascio*.

As to Plaintiff's arguments regarding a proper function-by-function analysis, the ALJ's RFC and RFC narrative is supported by substantial evidence as discussed above. (ECF No. 18 at 16-17).

The RFC discussion by the ALJ permitted meaningful review.[6]

Where there are two reasonable views of the conflicting evidence, the responsibility falls on the ALJ and it is not the Court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The Court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. Based upon the foregoing, substantial evidence supports the ALJ's RFC, both physical and mental limitations found.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act,

---

[6] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record." *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018); *Wilbanks v. Berryhill*, No. CV 1:17-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4476118 (D.S.C. Sept. 19, 2018).

42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

February 14, 2023
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge